UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-11632-RGS

WASHINGTON INTERNATIONAL
INSURANCE COMPANY,

v.

LYNCH BOTELHO CORPORATION,
STEPHEN C. LYNCH, RACHEL
LYNCH, WAYNE B. BOTELHO,
LISA A. DELANO-BOTELHO

ORDER ON SUMMARY JUDGMENT AND
REQUEST FOR DAMAGES

October 23, 2015

STEARNS, D.J.

Defendants, as indemnitors and signatories on the General Indemnity Agreement (GIA), are liable to plaintiff Washington International Insurance Company (WIIC) for the losses, costs, and expenses that WIIC incurred in satisfying claims made on its surety bonds underwriting defendants' performance on a construction contract with the City of Newport, Rhode Island for a project known as the Roadway Improvement Project – Spring 200-4 under Bid No. 04-0073 (the Project). Karney Aff. ¶ 18. In support of its motion for summary judgment, WIIA offers sworn testimony that it investigated and negotiated a settlement in good faith of a claim made under

the GIA (the Keating Claim).[1]  Karney Aff. ¶ 15; Lynch Dep. at 66.  "After engaging in good faith negotiations with Keating, on or about January 25, 2011, with the approval of the Indemnitors, the Surety satisfied the Keating Claim against the Bond by making a payment to Keating in the amount of sixty four thousand 00/100 dollars ($64,000)."  Pl.'s Statement of Facts (SOF), citing Karney Aff. ¶ 16; W. Botelho Dep. at 34-35; W. Botelho Dep. Ex. 4; and Lynch Dep. at 69-71.[2]

---

[1] Keating furnished materials to Lynch Botelho Corporation for the Project for which it did not receive payment.  Karney Aff. ¶ 12; Lynch Dep. at 64.  The Surety notified the indemnitors of the Keating Claim and of their duties and obligations under the GIA, including their responsibility to exonerate and pay the Surety's losses, attorneys' fees, costs and expenses.  Karney Aff. ¶ 13; W. Botelho Dep. at 33-34 and Ex. 3; Lynch Dep. at 65.

[2] An affidavit that conflicts with the affiant's deposition testimony does not raise a genuine issue to stave off the entry of summary judgment.  *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251-252 (3d Cir. 2007); *see also Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").  In opposition to summary judgment, defendants' counsel submits Lynch's affidavit where he states that "LBC disputed Keating's claim." Lynch Aff. ¶ 8.  However, in Lynch's February 26, 2015 deposition, he testified as follows:

> Q. P.J. Keating makes a claim against the bond right?
> A. Yes, they did.
> Q. All right. And you disagreed with the initial amount of the claim, correct?
> A. Yes, I did.

Q. And Washington International got involved, they made an investigation of that claim and initially took a position that they required additional information from P.J. Keating. Do you remember that?

A. I remember, yes.

Q. And do you remember Washington International approaching you and asking you for information and documents to support a defense to that claim?

A. Yes, I do.

Q. All right. And do you recall Washington International taking that information and negotiating with P.J. Keating in an effort to resolve the claim?

A. I remember giving you information, I remember that you were negotiating with them, . . . my position was I wanted them to contest the validity that they filed the claim with in the proper period . . . that the appropriate dollar amounts that Lynch Botelho was paying them during this period were properly attributed to the bond.

Q. There came a point in time when a settlement agreement was reached with P.J. Keating, correct?

A. Yes, there was. Obviously, yes.

Q. You approved the payment that Washington International made to P.J –

A. Yes, I did.

Q. Let me – this is an important question. Let me make sure I ask it and get an answer. You approved the payment that Washington International make to P.J. Keating to settle the case correct?

A. I don't remember signing anything, but I remember agreeing that we – verbally or by email.

Q. You – there was an agreement to the amount, correct?

A. I agreed I knew what you were paying Washington International –

Q. And you contributed –

A. I mean P.J. Keating.

Q. And you contributed $10,000 of that payment, in accordance with Exhibit 4, right?

A. Yes. Oh, yes.

3

In opposition to summary judgment, defendants contend that the parties entered into a settlement agreement – "a substituted contract which superseded the GIA."  Def.s' Mem. at 1.  Defendants further maintain that counsel accepted the "'final settlement agreement' between the parties [and] LBC began making payments under the terms of the Agreement."  *Id.* at 4.  While the parties negotiated a settlement, defendants decided that the "circumstances [had] changed" and that they could not execute the agreement.[3]  Notwithstanding, defendants in May of 2012, made a partial payment to the Surety of $17,500 to "avoid litigation."  Pl.s' Reply – Ex. 8.

---

Q. So Washington International and Lynch Botelho were on the same page and settled with P.J. Keating, correct?
A. We – yes.

[3] On November 17, 2011, defendants' counsel wrote to WIIA's attorney:

The circumstances have changed such that we cannot execute the settlement agreement as previously discussed. However, the indemnitors will start making payments, in the absence of the settlement agreement, starting next week.  I expect to receive a [sic] $12,500 early next week, which I will immediately forward to you.  The indemnitors will continue to make payments on account as much as possible and as often as possible to work the number down.  **It is our hope that, with these payments and the future payments, the surety will hold off on the indemnity action as we work forward and avoid litigation**.

Pl.'s Reply – Ex. 8 (emphasis added).

4

While more or less conceding that judgment must enter for WIIA under the GIA, defendants object to the amount WIIA contends it is owed. First they argue that the interest is excessive – that while the GIA requires the payment of interest, because "there is no reference as to the rate of interest . . . plaintiff is only entitled to 'reasonable interest.'" Rachel Lynch Suppl. Mem. at 3.

> Plaintiff paid $64,000 on or about January 25, 2011. Compounding interest at a rate of 5% for a five year period on a $64,000 payment, from January, 2011 to January 20, 2016, total $13,965, without credit for the $17,500 payments. Even with a 10% interest rate over the five year timeframe and without credit for the $17,500 payments, interest totals $29,702. In its motion, Plaintiff is seeking $35,370. This raises an issue of material fact.

Defendants also complain that WIIC has failed to properly account for its attorneys' fees.

While WIIC originally claimed $35,370.08 in interest, at the summary judgment hearing, WIIC's counsel recalculated the interest owed as $19,385. Deducting the defendants' $17,500 payment from the $64,000 indemnity payment, leaves $46,500, and with the revised interest calculation, WIIC's total demand is for $65,885. As requested at the hearing, as the prevailing party, WIIC will provide the court with a proposed form of final judgment that includes an explanation of its interest calculation. *See Saint-Gobain Indus. Ceramics Inc. v. Wellons, Inc.,* 246 F.3d 64 (1st Cir. 2001), citing

Mass. Gen. Laws ch. 231, § 6C (under Massachusetts law, the award of prejudgment interest runs from date of commencement of action where date of breach or demand is not established); *see also Sterilite Corp. v. Cont'l Cas. Co.*, 397 Mass. 837, 841-842 (1986) ("The dates of the payment of the various bills, which are readily ascertainable, determine the points at which Sterilite was obliged to commit sums which it rightfully should not have been obliged to commit. Before those bills were paid, Sterilite was not deprived of the use of its money. No interest is due on sums when Sterilite was not deprived of the use of those sums. Any other rule would result in a windfall for Sterilite, which the Legislature did not intend. Therefore, prejudgment interest under G.L. c. 231, § 6C, should be calculated in this case on the basis of the various dates on which the legal bills were paid by Sterilite.").

## ORDER

Consistent with the court's prior orders and rulings at the motion hearing, plaintiff Washington International Insurance Company's motion for summary judgment is <u>ALLOWED</u>.  Within ten (10) days of the date of this Order, WIIC will submit a proposed form of final judgment consistent with this Order, including an explanation of its interest determination of $19,385. The court will review the documentation of WIIC's request for attorney's fees and enter an award in conjunction with the entry of final judgment.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE